IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MATTHEW HIGGINS,<br>    Plaintiff,<br><br>      v.<br><br>METLIFE INC., METLIFE GROUP, INC.,<br>and METLIFE INVESTMENT<br>MANAGEMENT, LLC,<br>    Defendants. | CIVIL ACTION<br><br><br><br>NO.  22-3714 |

### MEMORANDUM OPINION

Plaintiff Matthew Higgins sued Defendants MetLife, Inc., MetLife Group, Inc., and MetLife Investment Management, LLC after he was terminated from his job with Defendant MetLife Group, Inc. ("MetLife").[1] He brings claims under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq.*, and Philadelphia Fair Practices Ordinance ("PFPO"), Phila. Code § 9-1101 *et seq.*

Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56 on all counts of Plaintiff's Complaint. For the reasons below, Defendants' motion shall be granted in part and denied in part.

### I.   FACTUAL BACKGROUND

Plaintiff Matthew Higgins was born in 1966. Between roughly 2007 and 2017, he was an

---

[1] Defendants argue, only in a footnote and without citation to any legal authority, that Defendants MetLife, Inc. and MetLife Investment Management, LLC did not employ Higgins and are therefore not proper defendants to this action. The Court will not address this argument as Defendants have failed to properly put it before the Court. *See Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994) ("[A] passing reference to an issue . . . will not suffice to bring that issue before [the] court." (citation omitted)); *Reynolds v. Wagner*, 128 F.3d 166, 178 (3d Cir. 1997); *see also Schmalz v. Sovereign Bancorp, Inc.*, 868 F. Supp.2d 438, 457 (E.D. Pa. 2012) ("An argument made only in a footnote is not worthy of credence (other than to be rejected by footnote).").

employee of non-party Logan Circle Partners.  In 2017, Defendants acquired Logan Circle Partners, and Plaintiff thereby became an employee of MetLife.

At MetLife, Plaintiff worked as a research analyst on the Industrials Sector Team within the Credit Research department, which was within MetLife's Public Fixed Income Sub Line of Business ("PFI").  From 2010 or 2011 through his termination in 2021, Plaintiff covered the Aerospace & Defense and Airlines sectors, which fall under the Industrials Sectors Team.

In 2019 and 2020, Jude Driscoll, who was Head of PFI, began taking steps to expand PFI in certain areas.  At the same time, Driscoll's manager, Steven Goulart, MetLife's Chief Investment Officer, informed him he needed to rationalize the business organization and cut costs.  The Credit Research department was identified as an area for restructuring.

In November 2020, Driscoll prepared a preliminary list of potential positions to select for elimination, which included Plaintiff's position.  Ultimately, four employees were terminated, including Plaintiff.

Plaintiff's last work day was December 3, 2020 and his employment was terminated effective March 2, 2021. After he was notified of his termination, Plaintiff raised several allegations to the effect he was being terminated due to his age.  These allegations were investigated by MetLife's employee relations department, which did not find that his age discrimination allegations were substantiated.

In April and August 2021, respectively, Plaintiff dual-filed a Complaint and Amended Complaint with the Pennsylvania Human Relations Commission ("PHRC") and Equal Employment Opportunity Commission ("EEOC"), asserting claims of age discrimination.

II.     **LEGAL STANDARDS**

A party is entitled to summary judgment if it shows "that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  "Inferences to be drawn from the underlying facts contained in the evidential sources must be viewed in the light most favorable to the party opposing the motion."  *Peters Twp. Sch. Dist. v. Hartford Acc. & Indem. Co.*, 833 F.2d 32, 34 (3d Cir. 1987).

"A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-26 (1986); *Anderson*, 477 U.S. at 248-52).  "The non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact." *Id.* (citation omitted).  A moving party is entitled to judgment as a matter of law where the "nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323.

In that Plaintiff relies on circumstantial evidence, rather than direct evidence, of discriminatory animus to support his claims, the burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies to his ADEA, PHRA, and PFPO disparate treatment and retaliation claims.  *Smith v. City of Allentown*, 589 F.3d 684, 689 (3d Cir. 2009) (applying the *McDonnell Douglas* framework to ADEA claims); *Keller v. Orix Credit All., Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997) (same); *Daniels v. Sch. Dist. of Phila.*, 776

F.3d 181, 193 (3d Cir. 2015) (applying the *McDonnell Douglas* framework to ADEA and PHRA retaliation claims); *Fasold v. Justice*, 409 F.3d 178, 183, 188 (3d Cir. 2005) (same); *Smith v. Thomas Jefferson Univ.*, 2006 WL 1887984, at *3 (E.D. Pa. June 29, 2006) (applying the *McDonnell Douglas* framework to PFPO claims).

The first step of the *McDonnell Douglas* framework dictates that the plaintiff bears the burden of making out a *prima facie* case of discrimination. *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013); *Hanafy v. Hill Int'l, Inc.*, 2023 WL 3010176, at *6 (E.D. Pa. Apr. 19, 2023). "To establish a *prima facie* case at summary judgment, 'the evidence must be sufficient to convince a reasonable factfinder to find all of the elements of [the] *prima facie* case.'" *Burton*, 707 F.3d at 426 (quoting *Duffy v. Paper Magic Grp.*, 265 F.3d 163, 167 (3d Cir. 2001) (emphasis added)). If the plaintiff fails to raise a genuine dispute of material fact as to any element of his *prima facie* case, summary judgment is warranted. *See Geraci v. Moody-Tottrup, Int'l, Inc.*, 82 F.3d 578, 580 (3d Cir. 1996).

Once the plaintiff makes out a *prima facie* case, the burden of production shifts to the defendant to offer a "legitimate non-discriminatory [justification] for the adverse employment action." *Burton*, 707 F.3d at 426 (citing *Smith*, 589 F.3d at 690). If the defendant does so, the third step of the framework shifts the burden of production back to the plaintiff to "provide evidence from which a factfinder could reasonably infer that the employer's proffered justification is merely a pretext for discrimination." *Id.* (citing *Fuentes v. Perskie*, 32 F.3d 759, 764-65 (3d Cir. 1994)).

To make a showing of pretext, the plaintiff "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more

4

likely than not a motivating or determinative cause of the employer's action." *Id.* at 427 (quoting *Fuentes*, 32 F.3d at 764).

### III. DISCUSSION

#### A. PFPO Administrative Exhaustion

Plaintiff dual-filed administrative complaints with the Pennsylvania Human Relations Commission (PHRC) and the Equal Employment Opportunity Commission (EEOC). He did not, however, file a complaint with the Philadelphia Commission on Human Relations ("Philadelphia Commission").[2] On that basis, Defendants argue that Plaintiff has failed to administratively exhaust his Philadelphia Fair Practices Ordinance (PFPO), Phila. Code. § 9-1101, *et seq.*, claims. Defendants further argue that, even if he had exhausted his PFPO claims, they are nonetheless precluded "by virtue of his pursuit of his PHRA claims."

The plain text of the PFPO does not include an administrative exhaustion requirement. *See Ahern v. Eresearch Tech., Inc.*, 183 F. Supp.3d 663, 667-68 (E.D. Pa. 2016) ("The PFPO statute does not explicitly indicate that a plaintiff must exhaust her administrative remedies to bring suit."). Nevertheless, every court to address the question of whether exhaustion is required has concluded that PFPO claims must be administratively exhausted before a party may pursue such claims in court. *See, e.g., Hall v. Res. for Hum. Dev., Inc.*, 2000 WL 288245, at *2 (E.D. Pa. Mar. 7, 2000); *Richards v. Foulke Assocs., Inc.*, 151 F. Supp.2d 610, 616 (E.D. Pa. 2001); *Marriott Corp. v. Alexander*, 799 A.2d 205, 208 (Pa. Commw. 2002) (relying on *Richards*);

---

[2] The Pennsylvania Human Relations Commission (PHRC) is a state agency created pursuant to the Pennsylvania Human Relations Act (PHRA). The Philadelphia Commission on Human Relations (Philadelphia Commission) is a municipal agency created pursuant to the Philadelphia Municipal Code and Section 962.1 of the PHRA. *See Kedra v. Nazareth Hosp.*, 857 F. Supp. 430, 432 n.2 (E.D. Pa. 1994); *see* 43 P.S. § 962.1 ("The legislative body of a political subdivision may, by ordinance or resolution, authorize the establishment of membership in and support of a Local Human Relations Commission.").

*Wright v. Phila. Gas Works*, 2001 WL 1169108, at *5 (E.D. Pa. Oct. 2, 2001) (relying on *Richards*); *Ives v. NHS Hum. Servs., Inc.*, 2016 WL 4039644, at *3 (E.D. Pa. July 28, 2016) (relying on *Hall*, *Richards*, and *Marriott*); *Vandegrift v. City of Philadelphia*, 228 F. Supp.3d 464, 481 & n.150 (E.D. Pa. 2017) (relying on *Ives*); *Hudnell v. Thomas Jefferson Univ. Hosps., Inc.*, 537 F. Supp.3d 852, 858-59 (E.D. Pa. 2020) (relying on *Richards* and *Marriott*); *Bowdren v. Cristo Rey Phila. High Sch.*, 2023 WL 3362580, at *2 (E.D. Pa. May 10, 2023) (relying on *Richards* and *Marriott*); *see also Vazquez v. Carr & Duff, Inc.*, 2017 WL 4310253, at *8 (E.D. Pa. Sept. 28, 2017); *Rizzotto v. Quad Learning, Inc.*, 2019 WL 2766588, at *3 (E.D. Pa. June 28, 2019); *Rippy v. Pub. Health Mgmt. Corp.*, 2020 WL 832088, at *6 (E.D. Pa. Feb. 19, 2020); *Williams v. Carson Concrete Corp.*, 2021 WL 1546455, at *2 (E.D. Pa. Apr. 20, 2021).

The rationale underpinning these courts' conclusion that PFPO claims must be exhausted is that, given prior case law determining that PHRA claims must be administratively exhausted, *see Clay v. Advanced Computer Applications, Inc.*, 559 A.2d 917, 919-20 (Pa. 1989), allowing PFPO claims to proceed directly to court without administrative exhaustion would disrupt the administrative remedies scheme set forth under the PHRA. *See Richards*, 151 F. Supp.2d at 616 ("I do not believe the Pennsylvania Supreme Court would interpret the PFPO to allow Philadelphia employees to circumvent the PHRA and proceed directly to court without first exhausting their administrative remedies[.]").[3]  In other words, the administrative exhaustion requirement under the PFPO is a judicial creation based on structural and policy considerations—not the express language of the PFPO.

---

[3] While perhaps the earliest case to address the issue concluded that PFPO claims must be administratively exhausted on different grounds, namely that the PHRA's administrative exhaustion requirement in effect preempts or supersedes any conflicting provision (or lack of such a provision) in the PFPO, *see Hall*, 2000 WL 288245, at *2, the court in *Hall* misread the relevant provisions in the PHRA in reaching that conclusion. *Richards*, 151 F. Supp.2d at 614 ("I agree with plaintiff that the Hall court appears to have misread the PHRA[.]").

The parties do not challenge that there is an exhaustion requirement for the PFPO. They do, however, wrangle over whether that implicit requirement demands that a party file a discrimination complaint specifically with the Philadelphia Commission rather than with the PHRC and/or EEOC. In other words, the issue raised is whether PFPO claims can be exhausted by filing administrative complaints with the PHRC or EEOC and not the Philadelphia Commission.

There are two competing lines of cases on this issue. *See Bowdren*, 2023 WL 3362580, at *2 (discussing the disagreement among lower federal courts on the issue); *Newsome v. City of Philadelphia*, 2021 WL 2810289, at *4 (E.D. Pa. July 6, 2021), *reconsideration denied*, 2021 WL 3709509 (E.D. Pa. Aug. 20, 2021) (same).

The more established line of cases conclude that the administrative exhaustion requirement under the PFPO can be met by filing with the PHRC and/or EEOC. *See Hall*, 2000 WL 288245, at *2; *Richards*, 151 F. Supp.2d at 616; *Marriott*, 799 A.2d at 208; *Ahern*, 183 F. Supp.3d at 668; *Ives*, 2016 WL 4039644, at *3; *Vandegrift*, 228 F. Supp.3d at 482; *Newsome*, 2021 WL 2810289, at *4; *Hudnell*, 537 F. Supp.3d at 859; *see also Vazquez*, 2017 WL 4310253, at *8; *Rizzotto*, 2019 WL 2766588, at *3; *Williams*, 2021 WL 1546455, at *2; *Vasoli v. Yards Brewing Co., LLC*, 2022 WL 1423663, at *5 n.8 (E.D. Pa. May 5, 2022) (stating that the "implicit exhaustion requirement" applicable to PFPO claims "may be satisfied by filing a complaint with the PHRC").

Going against this long-established line of precedent, three recent cases have concluded PFPO claims can only be exhausted by filing a complaint with the Philadelphia Commission. *See Smith v. RB Distribution, Inc.*, 498 F. Supp.3d 645, 665 (E.D. Pa. 2020); *Peterkin v. Prospect Airport Servs., Inc.*, 2021 WL 2400753, at *21 (E.D. Pa. June 11, 2021); *Lee v. Bay,*

*LLC*, 2023 WL 1971209, at *3 (E.D. Pa. Feb. 13, 2023).  These cases ostensibly reach the opposite conclusion through interpretation of the text of the PFPO.

In doing so, these cases grapple with four subsections (divided among two sections) of the PFPO.  First, the PFPO sets forth a private right of action, providing as follows:

> If a complainant invokes the procedures set forth in this Chapter, that person's right of action in the courts of the Commonwealth shall not be foreclosed.  If within one (1) year after the filing of a complaint with the Commission, the Commission dismisses the complaint or has not entered into a conciliation agreement to which the complainant is a party, the Commission must so notify the complainant.  On receipt of such a notice the complainant may bring an action in the Court of Common Pleas of Philadelphia County based on the right to freedom from discrimination granted by this Chapter.

Phila. Code § 9-1122(1).  Within that same section, the PFPO provides that "[n]othing in [the PFPO] limits the right of an injured person to recover damages under any other applicable law or theory."  Phila. Code § 1122(4).

Next, the PFPO sets forth procedures for filing a complaint with the Philadelphia Commission:

> Any person claiming to be aggrieved by an unlawful employment, public accommodation or housing and real property practice may make, sign and file with the Commission a verified complaint in writing which shall state the name and address of the person or persons alleged to have committed the unlawful practice and the particulars thereof.  The complaint shall also contain such other information as may be required by the Commission.

Phila. Code § 9-1112(1).  This section also provides that the Philadelphia Commission "shall not accept a complaint from any person who has filed a complaint with the [PHRC] with respect to the same grievance."  Phila. Code § 9-1112(4).

On the basis of these provisions, *Smith* reasons that because, in its view, (1) PFPO Section 9-1122(1) sets forth a requirement that "plaintiffs may only exercise a private right of action after invoking the Commission's procedures and receiving notice from the Commission,"

8

*Smith*, 498 F. Supp.3d at 665, and (2) the PFPO prevents the Philadelphia Commission from considering complaints from anyone who has filed a complaint with the PHRC "with respect to the same grievance," *id.* (citing Phila. Code. § 9-1112(4)), then the plaintiff in that case, who filed a complaint with the PHRC but not the Philadelphia Commission and therefore did not obtain notice from the Commission, could not pursue her PFPO claims. *Id.* at 665. In other words, *Smith* concludes that the only means to exhaust PFPO claims is to file a complaint with the Philadelphia Commission and invoke the procedures under the PFPO, which, at the same time, forecloses one's ability to pursue PHRA relief due to the exclusivity provision in Section 9-1112(4). The same underlying reasoning animates *Peterkin* and *Lee*. *See Peterkin*, 2021 WL 2400753, at *21; *Lee*, 2023 WL 1971209, at *3.

There is a flawed premise in this reasoning: the PFPO does not, as these cases assume, set forth a requirement that a plaintiff can only exercise a private right of action for PFPO claims after invoking the procedures of the PFPO. As discussed *supra*, there is no explicit administrative exhaustion requirement in the PFPO—let alone one requiring exhaustion through filing a complaint only with the PFPO (and not the PHRC or EEOC). *See Ahern*, 183 F. Supp.3d at 667-68 ("The PFPO statute does not explicitly indicate that a plaintiff must exhaust her administrative remedies to bring suit.").

These cases nonetheless attempt to locate such a requirement in one of two provisions: either Section 9-1112(1), *see Lee*, 2023 WL 1971209, at *3, or Section 9-1122(1), *see Smith*, 498 F. Supp.3d at 665.

Section 9-1112(1) simply does not feature any such requirement but merely provides that a person "may make, sign and file" with the Philadelphia Commission a complaint alleging an unlawful practice under the PFPO. Phila. Code § 9-1112(1).

9

Nor does the plain text of Section 9-1122(1) require a complainant to invoke the PFPO procedures therein before pursuing PFPO claims in court. That section first provides that, "[i]f a complainant invokes the procedures set forth in [the PFPO], that person's right of action in the courts of the Commonwealth shall not be foreclosed." Phila. Code. § 9-1122(1). Crucially, the text does *not* provide the inverse, namely that a complainant *must* invoke the procedures under the PFPO in order to pursue a right of action in court. Similarly, with respect to obtaining notice from the Philadelphia Commission, the section states only that "[o]n receipt of [notice from the Commission] the complainant may bring an action in the Court of Common Pleas of Philadelphia County." Again, the plain text does *not* state the inverse, namely that a complainant *may not* bring an action in court *without* receipt of notice from the Philadelphia Commission. Without those inverse statements in the plain text, Section 9-1122(1) does not expressly require a complainant to invoke the procedures under the PFPO (by filing a complaint pursuant to Section 9-1112(1)) or receive notice from the Commission before pursuing such claims in court.

Instead, the text of Section 9-1122(1) is properly understood as preserving a complainant's right of action in court even if they invoke the procedures under the PFPO by filing a complaint with the Philadelphia Commission—*i.e.*, the section provides that a complainant may still seek judicial recourse after invoking the procedures of the PFPO. Such a reading, which reflects the plain text, moreover accords with judicial interpretation of a parallel provision in the PHRA. *See* 43 P.S. § 962(c)(1).[4] Specifically, the Pennsylvania Supreme Court

---

[4] The PHRA, in turn, provides:

> In cases involving a claim of discrimination, if a complainant invokes the procedures set forth in this act, that individual's right of action in the courts of the Commonwealth shall not be foreclosed. If within one (1) year after the filing of a complaint with the Commission, the Commission dismisses the complaint or has not entered into a conciliation agreement to which the complainant is a party, the Commission must so notify the complainant. On receipt of such a notice the complainant shall be able to bring an action in the courts of common pleas of the

has treated Section 962(c) of the PHRA as clarifying that, although a complainant may utilize the procedures of the PHRA, he or she does not thereby foreclose their ability to later pursue relief in the courts. *See Clay*, 559 A.2d at 920 (describing how Section 962(c) provides for "final, rather than initial, resort to the courts"). Moreover, in *Clay*, the Pennsylvania Supreme Court did not treat Section 962(c) as setting forth an administrative exhaustive requirement in its plain text. Instead, the Court determined that the PHRA required administrative exhaustion on the basis of structural and policy reasons. *See id.* ("Thus, the statutory scheme would be frustrated if aggrieved employees were permitted to circumvent the PHRC by simply filing claims in court."). This interpretation of the parallel provision in the PHRA accords with this Court's reading of the PFPO *supra*.[5]

Since the PFPO is silent on administrative exhaustion, the question then becomes how to interpret it given this silence. In interpreting local ordinances, courts apply the rules of statutory interpretation. *See City of Philadelphia v. City of Philadelphia Tax Rev. Bd. ex rel. Keystone Health Plan E., Inc.*, 132 A.3d 946, 952 (Pa. 2015). "Where a statute is unambiguous, its plain text will not be disregarded in furtherance of its spirit." *City of Philadelphia*, 132 A.3d at 952 (citing 1 Pa. Cons. Stat. § 1921(b)). When the statutory text is not explicit, the goal of

---

Commonwealth based on the right to freedom from discrimination granted by this act.

43 P.S. § 962(c)(1).

[5] Similarly, reading the notice provision in Section 9-1122(1) as not placing a requirement on the complainant to obtain notice before bringing an action in court—a reading the plain text requires in the absence of the inverse statement, *see supra*—is consistent with judicial interpretation of the parallel provision in the PHRA. *See Snyder v. Pa. Ass'n of Sch. Retirees*, 566 A.2d 1235, 1239 (Pa. Super. 1989) (treating the notice provision as a requirement imposed on the PHRC to deliver notice to the complainant rather than a requirement for the complainant to meet before proceeding with a lawsuit); *Hudnell*, 537 F. Supp.3d at 858 ("Unlike the process under Title VII, a notice of the right to sue is not required to bring a PHRA claim; rather, once the one-year period has expired, a complainant may file suit notwithstanding the fact that she has not received a letter from the PHRC.") (citing *Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 471 (3d Cir. 2001)).

11

interpretation is to ascertain the intention of the legislature.  *See* 1 Pa. Cons. Stat. § 1921(a), (c).

If the PFPO were to be understood to require exhaustion through filing with the Philadelphia Commission (and not another agency), this would, through the operation of the exclusivity provision in Section 9-1112(4), which prevents the Commission from accepting complaints from someone who has already filed with the PHRC, force a complainant to choose between pursuing relief under the PFPO or the PHRA.  Such a constraint, however, is inconsistent with the PFPO provision providing that "[n]othing in [the PFPO] limits the right of an injured person to recover damages under any other applicable law or legal theory." Phila. Code § 9-1122(4).  In other words, it would be odd for the Philadelphia City Council to provide that the PFPO does not limit the right of complainants to pursue damages under other laws, like the PHRA, while simultaneously forcing complainants to choose between seeking relief under the PFPO and the PHRA.  *See Vandegrift*, 228 F. Supp.3d at 482[6]; *see also Jackson v. Pennsylvania State Univ.*, 2018 WL 3631870, at *2 (M.D. Pa. July 31, 2018) (concluding under a similar local ordinance that an administrative exhaustion requirement could be met by filing with the EEOC and PHRC rather than the local commission where, otherwise, the complainant would need to "choose between bringing a suit under the [o]rdinance and bringing a suit under state and/or federal antidiscrimination laws").[7]  Such an interpretation would also be inconsistent

---

[6] *Vandegrift* is the only case that engages in an extended statutory interpretation analysis of the PFPO to reach the conclusion that PFPO claims can be exhausted by filing with the PHRC or EEOC.  While *Vandegrift* initially assumes the same false premise as *Smith*, *Lee*, and *Peterkin*, namely that the PFPO requires a complainant to file a complaint with the Philadelphia Commission as a condition of suing in court, *see id.* at 482, the Court nonetheless finds persuasive its ultimate conclusion, namely that the intent of the Philadelphia City Council is best captured by interpreting the PFPO to allow exhaustion through filing administrative complaints with the PHRC or EEOC.  *Id.* at 481-82.

[7] The court in *Lee* attempts to avoid this conclusion by reading Section 9-1122(4) as only providing that the PFPO "preserves a plaintiff's ability to seek relief under statutes *other than* the PFPO, not under the PFPO itself." *Lee*, 2023 WL 1971209, at *4.  In other words, *Lee* states, "Section 1122(4) doesn't preserve claims under the PFPO." *Id.*  This is a strained reading: why would the PFPO expressly state it does not foreclose the possibility of seeking relief under other law (like the PHRA) but simultaneously provide that one cannot pursue relief under both the

with the broad, remedial purpose behind the PFPO, which was enacted to "assure that all persons regardless of [various protected categories, including age] enjoy the full benefits of citizenship and are afforded equal opportunities for employment[.]" Phila. Code § 9-1101(1)(e); *see also Vandegrift*, 228 F. Supp. 3d at 482; *Richards*, 151 F. Supp.2d at 616 ("The PFPO and the PHRA, and therefore the PHRC and the Philadelphia Commission, were designed to address the common problem of unlawful discrimination in Pennsylvania.").

Furthermore, the PFPO is essentially a creature of the PHRA, *see* 43 P.S. § 962.1; *Vandegrift*, 228 F. Supp.3d at 480, and the PHRA expressly carves out a place for municipal ordinances such as the PFPO to exist and set forth substantive provisions apart from the PHRA. Specifically, the PHRA provides that

> nothing contained in this act shall be deemed to repeal or supersede any of the provisions of any existing or hereafter adopted municipal ordinance, municipal charter or of any law of this Commonwealth relating to discrimination because of race, color, familial status, religious creed, ancestry, age, sex, national origin or handicap or disability, but as to acts declared unlawful by section five of this act the procedure herein provided shall, when invoked, be exclusive and the final determination therein shall exclude any other action, civil or criminal, based on the same grievance of the complainant concerned. If the complainant institutes any action based on such grievance without resorting to the procedure provided in this act, such complainant may not subsequently resort to the procedure herein. In the event of a conflict between the interpretation of a provision of this act and the interpretation of a similar provision contained in any municipal ordinance, the interpretation of the provision in this act shall apply to such municipal ordinance.

43 P.S. § 962(b). While the PHRA thus provides for the exclusivity of its own procedures when invoked, it nonetheless expressly does not "repeal or supersede" municipal ordinances like the PFPO. *See Hartman v. City of Allentown*, 880 A.2d 737,

---

PFPO and the PHRA? Stated differently, it is difficult to read Section 9-1122(4) as not assuming that one can pursue relief under the PFPO while also pursuing relief under other laws, especially in the case of the PHRA, the state-law counterpart to the PFPO. For these reasons, the interpretive solution proffered in *Lee* simply does not resolve the tension posed by forcing a complainant to choose between pursuing relief under the PFPO and PHRA.

751 (Pa. Commw. Ct. 2005) (describing how the PHRA "was not intended to be exclusive in the field of anti-discrimination" in light of the carveout to preemption with respect to preserve municipal ordinances in Section 962(b)).  In this light, the exclusivity provision in PFPO Section 9-1112(4), which prevents the Philadelphia Commission from accepting complaints from someone who files a complaint with the PHRC, can be understood merely to reflect the procedural exclusivity provisions set forth in the PHRA—and not as limiting a complainant's ability to pursue relief under the substantive provisions of the PFPO and PHRA.

 For these reasons, Section 9-1112(4) is better understood as divvying up the procedural workload of investigating discrimination claims between the PHRC and the Philadelphia Commission—*i.e.*, a pragmatic measure to prevent dual and redundant proceedings between the two agencies.  *See Vandegrift*, 228 F. Supp.3d at 482 ("City Council likely prohibited the Philadelphia Commission from accepting complaints filed with the Pennsylvania Human Relations Commission to preserve administrative resources."); *see also Bowdren*, 2023 WL 3362580, at *2 ("It would serve no purpose to require that multiple administrative bodies receive the same complaint and carry out parallel investigations into the same set of facts.").

 Finally, the "main purpose of exhaustion requirements is to 'provide courts with the benefit of an agency's expertise and serve judicial economy by having the administrative agency compile the factual record' and by giving 'agencies the opportunity to settle disputes through conference, conciliation, and persuasion.'"  *Ives*, 2016 WL 4039644, at *4 n.2 (quoting *Robinson v. Dalton*, 107 F.3d 1018, 1020 (3d Cir. 1997) and *Antol v. Perry*, 82 F.3d 1291, 1296 (3d Cir. 1996)).  These purposes seem equally likely to be achieved when a complainant files a complaint

with the PHRC and/or EEOC as when they file with the Philadelphia Commission.

In short, in the absence of any explicit administrative exhaustion requirement requiring a plaintiff to invoke PFPO procedures by filing a complaint with the Philadelphia Commission before pursuing PFPO claims in court, this Court finds persuasive the long-established line of cases determining that filing a complaint with the PHRC and/or EEOC is sufficient to satisfy administrative exhaustion under the PFPO, at least where subsequent PFPO claims are fairly within the scope of the prior administrative complaints. *See Ives*, 2016 WL 4039644, at *4.[8]

Here, Plaintiff filed administrative complaints with the PHRC and EEOC. Defendants make no argument, except with respect to his retaliation claims, addressed *infra*, that his PFPO claims are not fairly within the scope of those complaints. Accordingly, Plaintiff has not failed to exhaust his PFPO claims on the grounds he filed with the PHRC and EEOC and not the Philadelphia Commission.

### B. Retaliation (ADEA, PHRA, and PFPO)

#### i. *Administrative Exhaustion*

Turning to Plaintiff's retaliation claims, Defendants argue that Plaintiff has failed to administratively exhaust such claims. Specifically, Defendants argue that Plaintiff made no reference to retaliation in the Complaint and Amended Complaint that were dual-filed with the PHRC and EEOC and, accordingly, failed to exhaust his retaliation claims.

Prior to seeking judicial relief under the ADEA, PHRA, or, as discussed *supra*, PFPO, a

---

[8] Courts have applied versions of the test for exhaustion set forth by the Third Circuit, which looks to whether the claims in a subsequent lawsuit are "fairly within the scope" of the prior administrative complaint, *see Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984); *Antol*, 82 F.3d at 1295, to determine whether PFPO claims have been exhausted through administrative charges filed with other agencies. *See Ives*, 2016 WL 4039644, at *4; *see also Ahern*, 183 F. Supp.3d at 668 (concluding that PFPO claims were exhausted because they were "within the scope" of a prior EEOC charge); *Vandegrift*, 228 F. Supp.3d at 483 (concluding PFPO exhaustion requirement met because claims under the PFPO were "predicated upon the same facts as the claims in [] EEOC charges").

plaintiff must exhaust all administrative remedies.  *See Kopko v. Lehigh Valley Health Network*, 776 F. App'x 768, 773 (3d Cir. 2019) (citations omitted); *Ives*, 2016 WL 4039644, at *3.  The test for exhaustion is "whether the acts alleged in the subsequent [judicial complaint] are fairly within the scope of the prior [administrative charge], or the investigation arising therefrom." *Antol*, 82 F.3d at 1295 (quoting *Waiters*, 729 F.2d at 237); *Ginsburg v. Aria Health Physician Servs.*, 2012 WL 3778110, at *4 (E.D. Pa. Aug. 31, 2012) (applying *Waiters* with respect to PHRA claims); *Hudnell*, 537 F. Supp.3d at 859 (applying *Waiters* with respect to PFPO claims).

Here, Plaintiff's retaliation claims do not fairly fall within the scope of either the Complaint or Amended Complaint filed with the PHRC and EEOC.  There are no allegations of retaliation on the face of either document, and neither narrative contains allegations amounting to conduct that can fairly be understood as retaliatory.  While Plaintiff contends that the statements "[he] complained of age discrimination in connection with [his] termination" and "[his] employer] failed to investigate [his] age discrimination complaint" can be construed as such, they do not provide any basis, without more, for his retaliation claims as they do not refer to any adverse action taken by Defendants following Plaintiff's complaint of age discrimination.  Moreover, as Plaintiff clarifies in his summary judgment briefing, his theory of retaliation is predicated on the alleged adverse action of being deprived a bonus after his termination.  Such allegations do not appear in either the Complaint or Amended Complaint.

Plaintiff's failure to mention retaliation or include allegations supporting his retaliation claims in his charges filed with the PHRC and EEOC constitutes a failure to exhaust those claims.  Summary judgment is therefore warranted with respect to those claims in favor of Defendants.  *See, e.g.*, *Kopko*, 776 F. App'x at 773-74 (affirming dismissal of retaliation claims for failure to exhaust where the "facts underpinning [the retaliation claims were] not fairly within

the scope" of the administrative charge or investigation arising therefrom).

### C. Age Discrimination Disparate Treatment (ADEA, PHRA, and PFPO)

Turning to the substance of Plaintiff's claims, Defendants argue that summary judgment is warranted on Plaintiff's age discrimination disparate treatment claims in that he (1) cannot establish a *prima facie* case of age discrimination because MetLife did not retain a similarly situated employee who was substantially younger than him; (2) MetLife had legitimate, non-discriminatory reasons for selecting his position for elimination; and (3) Plaintiff cannot demonstrate pretext as to those reasons.

To set forth the facts relevant to the discussion *infra*, at the start of his employment with MetLife, Plaintiff initially reported to John Jennings. Then, after 2009, he reported to Richard Davis. Richard Lee and Thomas Sarkis also worked as research analysts on the Industrials Sector Team.[9] Within the Industrials Sector Team, Plaintiff oversaw the work of Lee, a "junior level" employee. Sarkis had a similar role to Lee as a "lower-level analyst" but supported Davis rather than Plaintiff in that role. Lee is 28 years younger than the Plaintiff, and Sarkis is 19 years younger.

#### i. Prima Facie *Case*

To establish a *prima facie* case of age discrimination under the ADEA, PHRA, and PFPO, Plaintiff must demonstrate he was over the age of 40; subject to an adverse employment action; qualified for his position; and that the adverse employment action was on account of his age. *Fowler v. AT&T, Inc.*, 19 F.4th 292, 299 (3d Cir. 2021) (citing, *inter alia*, *Willis*, 808 F.3d at 644); *see also Bowdren*, 2023 WL 3362580, at *4 (claims of age discrimination under the PFPO are subject to the same analysis as claims under the ADEA). "In cases involving a

---

[9] Another employee, Leigh Bailey, worked on the Industrials Sector Team but out of the London office.

reduction-in-force, the last prong of an age discrimination case may be satisfied by showing that an employer retained a sufficiently younger, similarly situated employee." *Fowler*, 19 F.4th at 299 (citing *Anderson v. Consol. Rail Corp.*, 297 F.3d 242, 249-50 (3d Cir. 2002)). The Third Circuit has further stated that the *prima facie* case is not "intended to be rigid, mechanized, or ritualistic." *Willis*, 808 F.3d at 644 (quoting *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 352 (3d Cir. 1999)).

a. <u>Similarly Situated Employee</u>

Here, Defendants contest only the fourth element. They argue Plaintiff cannot point to any employees who were sufficiently younger and similarly situated to him who were retained during the restructuring. Specifically, Defendants argue that "Higgins was the only U.S.-based high-level research analyst on the Industrials Sector Team prior to his termination (other than the Sector Team Lead, Richard Davis, who is older than him)." Defendants further contend that Lee and Sarkis, the other two employees on the Industrials Sector Team in the U.S., were lower-level analysts and were thus not similarly situated to Plaintiff. In response, Plaintiffs argue that "Defendants retained two significantly younger employees from within Plaintiff's work group and gave them Plaintiff's job duties following his termination."

"A similarly situated employee does not need to be identically situated, but the comparator must be similar to plaintiff in 'all relevant respects.'" *Byrd v. Phila. Gas Works*, 2021 WL 5867881, at *7 (E.D. Pa. Dec. 10, 2021) (quoting *Wilcher v. Postmaster Gen.*, 441 F. App'x 879, 882 (3d Cir. 2011)). "A determination of whether employees are similarly situated takes into account factors such as the employees' job responsibilities [and] the supervisors and decision-makers[.]" *Wilcher*, 441 F. App'x at 882. In reduction-of-force cases, "similarly situated" employees are those who "work in the same area in approximately the same position."

18

*Lepore v. Lanvision Sys., Inc.*, 113 F. App'x 449, 452 (3d Cir. 2004) (citing *Anderson*, 297 F.3d at 249-50). Whether two employees are similarly situated is a "fact-intensive inquiry," *Monaco v. Am. Gen. Assur. Co.*, 359 F.3d 296, 305 (3d Cir. 2004), that is often unsuitable for resolution at summary judgment. *Bolton v. Bay Valley Foods, LLC*, 2020 WL 1853505, at *10 (W.D. Pa. Apr. 13, 2020) ("The question of whether employees were similarly situated is generally one of fact for the jury."); *Carroll v. Guardant Health, Inc.*, 511 F. Supp.3d 623, 647 (E.D. Pa. 2021) (similar).

Here, Plaintiffs have raised a genuine dispute as to whether Lee and Sarkis were sufficiently younger and similarly situated to Plaintiff. Lee and Sarkis were, respectively, 28 and 19 years younger than Plaintiff, and were, like Plaintiff, research analysts on the U.S. Industrials Sector Team who reported to Davis. While Defendants point to evidence supporting that Lee and Sarkis were lower-level analysts (who supported Plaintiff and Davis), they nonetheless assumed Plaintiff's work responsibilities following his termination. These facts, in the light most favorable to Plaintiff, create a genuine dispute as to whether Lee and Sarkis were similarly situated to Plaintiff. Accordingly, summary judgment is not warranted with respect to Plaintiff's disparate treatment on the basis of age claims.

Having concluded that there is a genuine dispute underlying Plaintiff's *prima facie* case for his age discrimination disparate treatment claims, it is not necessary to address the remaining steps of the *McDonnell Douglas* framework. *See Wilson v. Graybar Elec. Co. Inc.*, 2019 WL 2061607, at *6 (E.D. Pa. May 9, 2019) (listing cases denying summary judgment where there were genuine disputes of fact underlying plaintiff's *prima facie* case); *Sprenkle v. AMZ Mfg. Corp.*, 2018 WL 11488846, at *5 (M.D. Pa. Feb. 8, 2018) (denying summary judgment at the first *McDonnell Douglas* stage where court could not determine as a matter of law whether

plaintiff had made out a *prima facie* case of discrimination).

      An appropriate order follows.

**BY THE COURT:**

*/s/ Wendy Beetlestone*
_____
**WENDY BEETLESTONE, J.**